## JOHN N. WASH v. ELDORADO WASH et al., Appellants.

**Division Two, June 6, 1905.**

1. **WIDOW'S ELECTION: Execution of Statutory Powers: Construction.** The widow's right to take one-half of her childless husband's estate, subject to his debts, is purely of statutory creation, and her election can be upheld only by bringing her acts within its terms.

2. ——: **Filed After Death.** The widow within proper time executed her election to take a half interest in her husband's estate, and sent it by her attorney to be filed. He filed it in the office of the probate judge, and directed him to file it with the recorder. The probate judge did not file it there, but after her death he made a certified copy of it, and the attorney filed that in the recorder's office. *Held,* that there was no election by her. Unless the election is filed in the recorder's office during her lifetime, there is no election.

3. ——: ——: **Agent.** A deceased person can have no agent. So that the widow's election, formally executed and acknowledged by her, and filed by her attorney in the probate court within proper time, cannot by her attorney be filed with the recorder after her death, for on her death his agency ceased. Nor can a certified copy be filed with the recorder after her death, by either her attorney or the probate judge, so as to meet the requirements of the statute requiring the election to be filed with the recorder, for after her death she could have no agent for that purpose.

Appeal from Greene, Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*J. B. Harrison* and *Watson & Holmes* for appellants.

Upon the right of the widow's election we submit the following authorities: Fosher v. Guilliams, 120 Ind. 172; In re Vance, 12 L. R. A. 227; 11 Am. and Eng. Ency. Law (2 Ed.), 57-120; Garn v. Garn, 135 Ind. 687. The object of the statute is complete when the widow signs and acknowledges the declaration and that is the operative act, and under the Indiana authorities if she delivers the same to a third party, whether recorded or not at the time of delivery, and he deals with her interest as elected, she is estopped and her election is made, and he may file the instrument within the statutory period and prevent the bar of her election.

*Charles E. Morrow* for respondent.

The election of the widow was not made as required by statute. It was not filed in the recorder's office at all. Only a certified copy was filed after her death. R. S. 1899, sec. 2943; Allen v. Harnett, 116 Mo. 278; Daudt v. Musick, 9 Mo. App. 169; In re Gunyon's Estate (Wis.), 55 N. W. 152. An election to be valid must comply with all the requirements of the statute. Kemp v. Holland, 10 Mo. 295; Allen v. Harnett, 116 Mo. 287. It must be completed by the widow in her lifetime. The right to elect is strictly personal and cannot be exercised by anyone succeeding to her interests. Welch v. Anderson, 28 Mo. 293; Davidson v. Davis, 86 Mo. 440; Bradford v. Wolfe, 103 Mo. 398; Hamilton v. O'Neill, 9 Mo. 11; Sherman v. Newton, 77 Mass. 307;

Crozier's Appeal, 90 Pa. St. 384; In re Gunyon's Estate (Wis.), 55 N. W. 152; Fosher v. Gulliams, 120 Ind. 172. The right of election expires with her. It must be actually filed in her lifetime. In re Gunyon's Estate (Wis.), 55 N. W. 152; Crozier's Appeal, 90 Pa. St. 384; Allen v. Harnett, 116 Mo. 278. The privilege is rigidly personal. So strictly have these statutes been construed, that where the widow is insane and no provision made for anyone acting for her, the privilege is so rigidly personal that it could not be exercised by her guardian. Crozier's Appeal, 90 Pa. St. 384; Pinkerton's Admr. v. Sargent, 102 Mass. 568; Atherton v. Corliss, 101 Mass. 44; R. S. 1899, sec. 2943. Even the recording act does not provide for certified copies being recorded. It was no notice to anyone. The evidence does not show that Watson was authorized to file the election in the recorder's office. But if he were so directed by her, it was a mere agency, and the death of the widow terminated his authority, and he could not do it for her after her death. Prior v. Kiso, 96 Mo. 303; In re Gunyon's Estate (Wis.), 55 N. W. 152; 4 "Cyc.," 953. Equity cannot help appellant. Allen v. Harnett, 116 Mo. 287; Houx v. Bates County, 61 Mo. 391; Moreau v. Detchemendy, 18 Mo. 522.

GANTT, J.—This is a suit in partition commenced in the circuit court of Phelps county on the 26th of April, 1901. The defendants were all served, either by publication or writs of summons. The cause was afterwards sent on change of venue to Greene county. In the latter court a guardian *ad litem* was appointed for the minor defendants.

There is no controversy whatever as to the proof of the heirs of Thomas A. Wash, deceased. It is conceded by both parties that they are correctly stated in the petition.

It is alleged that Thomas A. Wash died intestate in Phelps county on the 15th day of May, 1899, own-

ing the land described therein, leaving S. Caroline Wash as his widow, and the other plaintiffs and defendants are his brothers and sisters and their descendants, except the defendants Pierre Watson and the Harrison Machine Works. Thomas A. Wash had no children. He married his brother's widow, and the defendant, Eldorado Wash, was both his niece and stepdaughter, being the daughter of S. Caroline Wash by her former husband, William Wash, his brother.

The petition alleged that S. Caroline Wash did not elect to take one-half of the lands whereof her husband died seized in lieu of dower, as she might have done, and on the 23d of February, 1900, she died leaving a will, set out in the petition, whereby she devised all the land described in the petition to her daughter, Eldorado Wash and Pierre Watson. It was also alleged in the petition that suit had been instituted in the circuit court of Phelps county, by some of her heirs to contest said will, and that there had been a decision in said court sustaining the same, and an appeal had been taken to the Supreme Court and the same was pending therein. That since the death of said S. Caroline Wash, said Pierre Watson had executed a deed of trust of said land to G. A. Miller, trustee, for the Harrison Machine Works, to secure a note therein described; that on the 25th of September, 1900, Pierre Watson made a quitclaim deed to all the said lands to Eldorado Wash; that as a matter of fact said S. Caroline Wash only had a dower interest in said lands, and she could will no interest therein to Eldorado Wash and Pierre Watson, and for that reason, Pierre Watson and the Harrison Machine Works had no interest in said land, and Eldorado Wash had only an undivided one-eighteenth, which she inherited from her uncle, the said Thomas A. Wash. There was an allegation that the land could not be divided in kind, and there was a prayer for judgment, for rents and profits, and that they be decreed a

lien and charge on the interest of Eldorado Wash and for partition and sale.

The answer of Eldorado Wash was a general denial, but admitted that Thomas A. Wash died intestate seized of the land described in the petition, and that S. Caroline Wash was his widow, and averred that S. Caroline Wash duly made an election to take one-half of the lands of Thomas A. Wash, subject to debts, and that she died February 23, 1900, and left the will set out in the petition, and that a suit was pending to contest the same in the Supreme Court; admitted a deed from Pierre Watson to herself, and alleged that she was the owner of one undivided half of said lands by virtue of the election of said S. Caroline Wash, and the will of said S. Caroline Wash, and the deed from Pierre Watson to herself. She alleged further that the debts of the estate had not been paid and for that reason partition could not be had; she admitted further that she was in possession of the lands and running the same, but was accounting to the probate court for the rent, and denies that she had converted the same.

The only controversy in this case arises over the sufficiency of the election made by Mrs. S. Caroline Wash as the widow of T. A. Wash. The plaintiffs offered a paper in evidence which was executed by said S. Caroline Wash on the 17th of August, 1899, and filed in the office of the probate judge or clerk of Phelps county, on the 28th of August, 1899. It is in words and figures as follows:

"Now this day comes Carrie Wash, widow of the said T. A. Wash, deceased, and shows to the court that said T. A. Wash died without any child or other descendants in being capable of inheriting, and that she elects to take as dower in the estate of T. A. Wash, and in lieu of dower under the provisions of sections 4513, 4515 and 4516 of the Revised Statutes of Missouri of 1889, all the real and personal estate which come to her husband in right of her marriage with him, as also all

the personal property of said T. A. Wash which come to his possession with her written assent, and which remained undisposed of at the time of the death of said T. A. Wash; and said S. Caroline Wash elects to take in addition to the above and subject to the payments of the debts of said T. A. Wash, one-half of the real estate and personal estate belonging to the said T. A. Wash at the time of his death, all the above to be her absolute property.   Witness my hand this 17th day of August, 1899.                                 S. C. WASH.

"On this 17th day of August, 1899, personally appeared before me Carrie Wash, to me known to be the person described in, and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.

"CHARLES ROSTER,
"Justice of the Peace."

On the back of above paper is the following:
"Estate of T. A. Wash, deceased, election of property by widow, Carrie Wash.   Filed August 28, 1899.

"ALBERT NEUMAN,
"Judge of Probate."

The plaintiffs next offered in evidence a certified copy of the said paper certified by the judge of the probate court to be a true copy of the same as it appeared of record in his office, which said certified copy of said paper, together with the certificate thereon, was filed for record in the office of the recorder of deeds of Phelps county, Missouri, on the 15th day of August, 1900. The evidence tended further to show that Thomas A. Wash died May 15, 1899; that letters of administration were granted on his estate July 10, 1899, and notice of the letters was published within thirty days thereafter.   The original election itself was never filed in the recorder's office. This was practically all the evidence offered by the plaintiffs.

The defendants offered in evidence the testimony of J. A. Watson, Esq., who testified that he prepared the election of Mrs. Wash, and represented her during the administration of the Wash estate. After her election was executed he took it to Rolla and filed it with the probate judge; it was his recollection that he told Judge Neuman to record it, and make out a copy or something, that it had to be filed in the recorder's office, and left it at that time and paid no more attention to it until after the death of Mrs. Wash, when he went to Judge Neuman and inquired if he had filed it with the recorder as he had directed, and found that it was still in Neuman's office and had not been filed with the recorder; that he then had a copy of the election made and then filed it himself, or had Judge Neuman do it. He thought the original paper was misplaced at the time he went to see about it after Mrs. Wash's death, but is not sure about it; she was dead at the time he had the certified copy filed in the recorder's office.

The question arises upon the foregoing state of facts, whether Mrs. Wash's election was complete so as to vest in her an undivided one-half of the lands of which her husband Thomas Wash died seized, he having left no children. Section 2943, Revised Statutes 1899, provides: ''Such election shall be made by declaration, in writing, acknowledged by some officer authorized to take acknowledgments of deeds, and filed in the office of the clerk of the court in which letters testamentary or of administration shall have been granted within twelve months after the grant of the same; and such declaration shall also be filed in the recorder's office in the county in which letters testamentary or of administration were granted, within fifteen months after the grant of same, otherwise she shall be endowed under the provisions of sections 2933, 2935 and 2936.'' This section of the statute was construed by this court in Allen v. Harnett, 116 Mo. 278, wherein it appeared that Mrs. Harnett had duly executed her elec-

tion to take one-half of her husband's estate subject to debts, and acknowledged the same before a notary public and on the day that the paper was written, signed and acknowledged, the notary public, who was also the attorney of the estate of her husband, placed the same in an envelope and directed it to the judge of the probate court, and prepaid the postage thereon, and deposited it in the mail. After the time for making her election had elapsed she discovered that it had never been received by the probate judge, and executed a new election duly acknowledged, and filed it in the office of the probate court. In a contest between her and the heirs of her husband, it was held that her failure to file her first acknowledgment in the probate court within the time prescribed in said section was fatal, and she could only be endowed under the other sections of the statutes. It was said by BURGESS, J.: "This right is purely statutory. It did not exist at common law. Then to entitle the widow to its benefits she must bring herself within its provisions. Equity can afford her no relief. Admitting all the evidence introduced in her behalf to be true, then she did not comply with the statute. That she intended to do so there can be no question. It devolved upon her to see that her election was not only duly and timely executed, but that it was also filed in the office of the judge of the probate court of St. Charles county within twelve months after the granting of letters of administration on her deceased husband's estate. It will not do to depend upon the mails under such circumstances, and run the risk of papers of so much importance being miscarried and never reaching their destination." That decision was in line with various other previous decisions of this court as to the execution of statutory powers.

In this case, as in that, it can be said that it was clearly the intention of Mrs. S. Caroline Wash to make her election, and to take one undivided half of her hus-

band's estate, subject to the payment of his debts, but she did not comply with the statute and file that declaration of election in the recorder's office in the county in which the letters of administration had been granted within fifteen months after the grant of the same. And we can see no authority for dispensing with any part of the statutory requirements. It is true that after her death, her attorney filed a certified copy of the election in the recorder's office but it is too plain for discussion that when Mrs. Wash died her death revoked all powers of attorney which she had created in her lifetime, and that her attorney, after her death, could not complete her election by filing the copy of her election in the probate office in the recorder's office, nor would his filing of the original election have mended the matter and secured to her devisees the benefit of the statute which she had lost by her failure to comply with the requirements in her lifetime.

This exact point was ruled in Gunyon's Estate, 55 N. W. 152, wherein the court said: ''The right to make such election or renunciation is purely a personal privilege of the widow, and is terminated by her death. It is not a property right which survives to her representatives or heirs. To be operative, it must be complete within her lifetime, and by the statute it is required to be, by notice filed in the court within one year after the death of her husband; 'and upon filing such notice, she shall be entitled,' etc., as in the statute stated. Until filed in court she may reconsider it, and claim under the will. It is the giving of the notice, by filing it, which is made by the statute the operative act of election or renunciation, and, where a right grows out of an election, it cannot arise or come into existence until the election is complete. It is well settled that the election in such case cannot be made by any one in her name or otherwise, after her death. [Schouler, Dom. Rel., sec. 206; Sherman v. Newton, 6 Gray 307; Atherton v. Corliss, 101 Mass. 44, 45; Crozier's Appeal, 90

Pa. St. 384; Jackson's Appeal, 126 Pa. St. 105, 107, 108, 17 Atl. 535; Welch v. Anderson, 28 Mo. 293.]

"It does not appear in what way the election executed by the widow came to the hands of the executor, but presumably with her other papers. Had she, however, delivered it to him, or to any other person, with instructions to file it in the proper court, this would have created a mere agency which would have been certainly terminated by her death. For these reasons the claims of the executor of Fanny Gunyon cannot be sustained, and the judgment of the circuit court in his favor is erroneous and must be reversed."

And the same doctrine is stated in volume 5 Am. and Eng. Ency. Law (1 Ed.), 918.

In view of the fact that section 2939, Revised Statutes 1899, makes a marked change in the devolution of titles to real estate from that prescribed in our laws of descent and distribution it can readily be seen that it is a matter of no ordinary importance to heirs and to those dealing in real estate that the evidence of such election should be kept as a public record, open to the world, and the burden cast upon the widow desiring to make such election is so slight that the most indigent can avail herself of it and the provision as to recording so plain and simple that one failing to comply with it must suffer whatever loss results from her negligence in so doing. In our opinion the plain letter of the statute must control and we are powerless to add anything to it.

It results that in view of the previous decisions of this court it must be held that Mrs. Wash did not make her election in the manner and within the time prescribed by the law, and therefore, she did not acquire an undivided one-half of the lands in suit, and the judgment of the circuit court must be and is affirmed.

All concur.