THE HARTFORD-CONNECTICUT TRUST COMPANY, EX-
ECUTOR, *vs.* THE PHOENIX STATE BANK AND TRUST
COMPANY ET AL.

First Judicial District, Hartford, January Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 4th—decided March 2d, 1929.

*Harry W. Reynolds,* for the appellant (plaintiff).

*Thomas Hewes* and *Richard H. Phillips,* for the appellees (defendants Leontine H. Bick *et al.*).

MALTBIE, J. Leontine M. Gillett and Albert B. Gillett were married May 26th, 1869. On November 30th, 1897, they executed a formal agreement in which, in pursuance of the provisions of §§624 and 2798 of the General Statutes of 1888 then in force, each agreed to abandon all rights in the property of the other and accept in lieu thereof the rights given by §§ 623, 2796 and 2797 of the General Statutes of 1888 as amended and then in force. A copy of this agreement is printed in the footnote.

---

AGREEMENT

Albert B. Gillett and Leontine M. Gillett

WHEREAS, Albert B. Gillett and Leontine M. Gillett, both of the City and County of Hartford and State of Connecticut, were married on the 26th day of May, 1869, and prior to the 20th of April, 1877, and

WHEREAS said parties have agreed together to accept and comply with the statues of this State providing for the abandonment of the present rights of each in the property of the other and the acceptance in lieu thereof of the provisions of the statutes of this State applicable to marriages contracted subsequent to the said 20th day of April, 1877.

Now, THEREFORE, this agreement made this 30th day of November, 1897, by and between said Albert B. Gillett and said Leontine M. Gillett, his wife as aforesaid, WITNESSETH.

Each of said parties in consideration of the agreements of the other as herein contained and in pursuance of the provisions of the

It was recorded in the town clerk's office in Hartford, where the parties resided, on December 16th, 1897, but it was not then nor has it ever been recorded in the Court of Probate for the district of Hartford. Mrs. Gillett died March 11th, 1927, intestate, and the Phoenix State Bank and Trust Company is administrator upon her estate. Mr. Gillett died March 20th, 1927, leaving a will, and the Hartford-Connecticut Trust Company is executor thereunder. After his death, his executor offered the agreement for record in the Court of Probate, but the court declined to receive it, in order that the rights of the parties might not be affected pending the final determination of the controversy. Within the time limited for presenting claims against the estate of Mrs. Gillett, the executor of Mr. Gillett's estate filed a claim in which he demanded the property composing her estate by virtue of the agreement, but this claim seems not to have been acted upon. When the administrator of Mrs. Gillett's estate applied for an order ascertaining the heirs and distributees, the executor of Mr. Gillett's estate again claimed the property by virtue of the agreement. The Court of Probate held that the agreement was ineffective and ascertained the heirs of her estate without regard to it. The executor appealed from that decree to the Superior Court and the case comes now before us upon a stipulation of facts and a reservation for our advice.

The statutory provisions under which the agreement

statute in such case made and provided, hereby covenants and agrees each with the other, that said parties respectively will and hereby does abandon all rights in the property of the other either under prior statutes in force at the time of their marriage or now in force, or at common law, and that each will and hereby does accept in lieu of said rights so abandoned as aforesaid the rights given by sections 623, 2796 and 2797 of the General Statutes of the State of Connecticut as amended and as in force at the date hereof.

in question was drawn had their origin in Chapter 114 of the Public Acts of 1877. This statute vastly changed the property rights and liabilities of husband and wife. It provided that in all marriages thereafter contracted neither party should acquire by force of the marriage any right to or interest in the property then owned or thereafter acquired by the other, except the share in the estate of a deceased party to the marriage provided in a subsequent section of the statute; it gave the wife the right to her separate earnings and the power to make contracts and conveyances, imposed upon her a liability for her debts and defined the liabilities of both with respect to debts incurred by her or in relation to the family; and it made specific provisions as to the rights of husband and wife in the property of the other on the death of either. Section 5 of the statute reads as follows: "The foregoing provisions shall apply only to marriages hereafter contracted; but in the case of marriages already existing any husband and wife may, during the marriage, enter into a written contract with each other for the mutual abandonment of all rights of either in the property of the other under existing statutes or at common law, and for the acceptance instead thereof of the rights given by this act; which contract shall be recorded in the probate court of the district and in the town clerk's office of the town in which they reside. And upon such contract being so made and recorded the provisions of this act shall apply to such marriage in the same manner as to marriages hereafter contracted."

In 1885 the provisions of this Chapter relating to the rights in the property after the decease of a husband or wife were re-enacted as a part of a general revision of the probate law and it was therein provided that the provisions of the Act should apply to

marriages contracted prior to April 20th, 1877, in any case where the husband and wife had entered into a written contract such as that specified in §5 of the original Act, "which contract shall have been recorded in the Court of Probate of the district and in the town clerk's office of the town in which they reside;" but in 1886 this provision was replaced by language almost literally corresponding with that used in §5 of the original Act. Public Acts of 1885, Chap. 110, §195; Public Acts of 1886, Chap. 99, §3. In the statute of 1886, §4, the section of the statute of distributions which is now §5061 of the General Statutes first took form; it specified the share in the estate of a deceased husband or wife which was to be distributed to the survivor where the marriage took place on or after April 20th, 1877, or where, having been married before that date, they did, during the marriage, enter into the contract provided in the Act of 1877, and "cause the same to be recorded as in said section is provided." The sentence in §5 of the original Act, "And upon such contract being so made and recorded the provisions of the act shall apply to such marriage in the same manner as to marriages hereafter contracted," was abbreviated in 1888 to read, "thereupon, said provisions shall apply to such marriage." General Statutes, Rev. 1888, §2798. In the Revision of 1902, §396, the phraseology of the statute concerning the rights of husband or wife in the estate of the other after death was again changed and it was provided that in case of marriages existing prior to April 20th, 1877, the provisions of the Act should apply whenever the husband and wife did enter into a written contract with each other in accordance with the provisions of §5 of the original Act and "record such contract in the Court of Probate of the district, and in the town clerk's office of the town in which they reside." These are the only changes made in the stat-

ute since its enactment relevant to our present inquiry, and it still stands in substance as a part of our law. General Statutes, Rev. 1918, §§5055, 5056, 5274-5276.

In determining the intent of the legislature with reference to the importance to be attributed to the requirement for the recording of the agreement, the language of the statute is significant. Not merely is the recording directed in the clearest mandatory form, but the Act states that "upon such contract being so made *and recorded*" the provisions of the law shall apply to marriages in effect before its amendment. So the repetition in the succeeding statutes of the requirement that the contract shall be recorded, is significant. The practical necessity of such recording is apparent. The Act altered largely the rights of husband and wife as regards property, contracts and liabilities; and the changes in these respects might, as regards marriages in effect before April 20th, 1877, be made effective at any time. Creditors of either husband or wife or persons contemplating agreements with them were justly entitled to notice of the changed status and to a formal record of it upon which they might rest with assurance. The same policy would dictate this as requires the recording of conditional sales, mortgages of personal property, certificates of the organization of limited partnerships, sales of certain businesses in their entirety, and such instruments. General Statutes, §§4327, 4745, 4749 and 5206. The danger that others might be misled through ignorance of the changes in rights created by such instruments is a compelling reason for requiring that they be placed on public record, in that office where people are wont to look for documents affecting property interests. But there is another and perhaps stronger reason in the situation before us. The statute made the wife liable for her own

debts and restricted the liability of the husband as to them to certain situations enumerated in it, and it further provided that they should be equally liable to third persons for articles purchased for the joint benefit of both or for the support of the family or the reasonable apparel of the wife or her support when abandoned by her husband. By these provisions, it not only affected the rights of the parties as between themselves, but also in some respects created and in others limited the rights of those who might in the future deal with them. These changes made it necessary that notice of the agreement be given in order that such persons might be apprised of their rights under the statute.

Tested both by the terms of the statute and by the end designed to be accomplished, the requirement that such an agreement be recorded must be regarded as mandatory and not merely directory. *Morey* v. *Hoyt,* 65 Conn. 516, 524, 33 Atl. 496; *Gallup* v. *Smith,* 59 Conn. 355, 22 Atl. 334; Black on Interpretation of Laws (2d Ed.) p. 534. There is, perhaps, reason to attach less significance as constituting public notice to the requirement that the agreement be recorded in the Court of Probate than there is as regards its recording in the town clerk's office; but we cannot dissect the requirement of the statute as to recording and attribute less significance to one part of it than we do to the other; and, as indicative of the legislative intent, it is noteworthy that recording in the Court of Probate is the first mentioned of the two. Decisions in other States in analogous situations support our conclusion that the recording of the instrument as required by the statute is a condition to its becoming effective to bring into force the terms of the statute. *Wash* v. *Wash,* 189 Mo. 352, 358, 87 S.W.

993; *Church* v. *McLaren*, 85 Wis. 122, 55 N.W. 152; *Tyler* v. *Reynolds*, 53 Iowa, 146, 4 N.W. 902.

The words of the statute are precise and clear that it is "upon such contract being so made and recorded" that the change in rights comes about and this language can only be interpreted to mean that the recording required by the statute was a condition precedent to the change becoming effective. *Jolly* v. *Hancock*, 22 L.J. Exch. 38. Not having been recorded in the lifetime of the parties, it cannot now be made effective by the acts of the executor in offering it for record. Upon being properly recorded, it would give rise to immediate rights and liabilities and create inchoate rights which would spring into existence at the death of either party. To permit it to be filed by an executor after death, is, on the one hand, to cause rights in the property which did not exist at death thereafter to spring into existence, and, on the other, to divest rights which at death had become vested in those entitled to the property by inheritance. We must hold that the agreement, not having been filed as required by law, did not comply with the terms of the statute.

The executor of Mr. Gillett's estate claims, however, that even if the agreement is not effective as a compliance with the statute, it still may be given effect as an agreement between the parties binding upon them in equity. It is not possible, however, to divorce this agreement from the statute. It specifically sets out that it is based upon an agreement between the parties that they will "comply with the statutes of this State" providing for the abandonment of the present rights of each in the property of the other and "the acceptance in lieu thereof of the provisions of the statutes of this State applicable to marriages contracted subsequent to" April 20th, 1877, and each

promises the other "in pursuance of the provisions of the statute" to abandon all present rights in the property of the other and to "accept . . . the rights . . . given by sections 623, 2796 and 2797 of the General Statutes" as amended. In the first place, it is plain that this was intended to be an agreement in compliance with the statute, and, as recording was necessary to such an agreement, it could not become effective in the absence of such recording. Suppose, as is by no means impossible, Mr. and Mrs. Gillett had executed this agreement in full appreciation of the terms of the statute, with a definite and clearly understood purpose to have it ready to be made effective in some possible contingency, and meanwhile to withhold the final step, the recording in the Court of Probate. In such a situation, lacking that recording, certainly the agreement could not be made effective. When they state as clearly as they do, that the agreement is one under the statute and to carry out the terms of the statute, they must be regarded as intending to create a situation where it is to be effective only if the statute is complied with. Moreover, among the sections of the statute particularly referred to as creating the rights which they propose to make effective are two, now §§5274 and 5275 of the General Statutes, which give to the wife the right to contract independently of the husband, make her property liable for her debts, free her husband from liability for her debts except in the instances specified, and establish an equal liability for certain debts incurred in relation to the family. These provisions reach far beyond the property rights of the parties as between themselves, as we have already pointed out, and no contract could put them into effect except by virtue of the terms of the statute. The situation is very different from that presented by *Chehak* v. *Battles*, 133 Iowa,

107, 110 N.W. 330, and other like cases, where an agreement for adoption has been given effect to determine rights of property between the parties, although the necessary steps to bring about a lawful adoption have not been taken. It more nearly approximates the situation which is referred to in *Horner* v. *Maxwell,* 171 Iowa, 660, 666, 153 N.W. 331: "Here, however, the instrument was prepared in strict conformity with the statute and with a view to recording, and therefore with the sole object of effecting adoption. It was not a contract within the meaning of the term, but the compliance in form with the statutory provisions to effect legal adoption in the only manner possible. A writing merely in compliance with the statutes is not a contract, nor do these statutes undertake to authorize or regulate contracts. They are intended rather to give the right of inheritance, which does not arise from contract but from law. *Jordan* v. *Abney,* 97 Tex. 296, 78 S.W. 486. But this was not effected, owing to the failure to record, and the purpose of executing the instrument was defeated and it rendered nugatory." See also *Albring* v. *Ward,* 137 Mich. 352, 100 N.W. 609.

To the first question in the reservation asking whether the agreement was effectual to change the survivorship rights of the parties from those which would otherwise prevail, we answer, no. This renders it unnecessary to answer the second question.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.