## McGinnis v. McGinnis' Ex'r et al.

May 1, 1945.

Edward P. Humphrey for appellant.

Ben F. Washer, Edward A. Dodd and Robert J. Speckman for appellees.

OPINION OF THE COURT·BY JUDGE CAMMACK—Affirming.

Gelon R. McGinnis died testate in April, 1942. On April 16th, his will was probated and the Liberty National Bank & Trust Company qualified as executor and trustee thereunder. Provision was made for Mrs. McGinnis in paragraph (b) of Item 4 of the will. This provision follows: "The Trustee shall pay to my wife, Mary McIntosh McGinnis, so long as she may live and remains my widow, the entire net income from the trust estate. In the event the net income from said trust estate is not sufficient to pay my wife, Mary McIntosh McGinnis, the sum of Two Hundred ($200.00) Dollars Per month, then I direct that the Trustee shall use so much of the principal as may be necessary in order that said monthly payment of $200.00 may be effected, and said payments shall continue so long as my said widow shall live and does not re-marry, or until the said trust fund is exhausted."

Provision was made in Item 5 for the payment of $25 per month after the death of Mrs. McGinnis to her mother and father and to the appellee, Daphne Hedden. The trustee was given the right to encroach upon the principal of the estate to make the $25 payments to these beneficiaries. Under Item 6 it was directed that, after the death of the beneficiaries just named, the remainder of the estate should go to the Lawrenceburg Presbyterian Church at the rate of $800 per annum to be used in payment of the pastor's salary until the balance of the estate was consumed.

On June 15, 1942, Mrs. McGinnis, upon the advice of counsel, the Honorable Thad Cheatham, of Taylorsville, Kentucky, renounced the will. On advice of her present counsel Mrs. McGinnis instituted this action on August

20, 1943, to set aside her renunciation of her husband's will.

During the arguments on the demurrer to the petition the chancellor, Honorable Churchill Humphrey, announced that he desired to hear Mrs. McGinnis. The reason for his decision may be gathered from the following memorandum opinion which appears in the record:

"This is one of those cases where covin of, imposition upon, and improvidence of chancery's favored (widow) is suggested. Improvidence is pleaded; covin and imposition are not brought on the stage but are painted on the back drop.

"At first impression I do not think there is anything in plaintiff's case, but I suspend judgment until I can have heard her story and her counsel shall have had opportunity to complete his argument. After that I will decide whether to rule on demurrer or to reserve ruling until the case is heard in chief.

"This may be irregular, highly irregular. But this court is too busy to permit its bar to become a fighting pit for the gamest of all cocks, the Kentucky lawyer. I get the distinct impression in this case that counsel, instead of attempting to advise the court on fact and law, are jockeying for position and trying not the case but one another. The court will let the plaintiff tell her own story, then the court will determine whether to rule on demurrer or to reserve ruling and to direct counsel to proceed along conventional lines.

"Just one witness—and that the plaintiff. If the plaintiff does not testify on the twenty-fourth, the court will give her counsel opportunity to complete his argument on demurrer and will then rule on the sufficiency of her petition."

After hearing Mrs. McGinnis at length, and also some testimony of a representative of the trustee, the chancellor rendered the following opinion:

"The plaintiff widow renounced her husband's will. This after consultation with Lawyer No. 1.

"The plaintiff widow has now consulted Lawyer No. 2; she wishes to revoke her renunciation and reinstate herself as beneficiary under the will.

"The case is pending on demurrer to petition. From the pleading itself I couldn't determine whether the widow charged covin, or oppression.

"So I let the widow tell her own story in open court. The court has no right perhaps to consider this testimony on demurrer—that is under our code; of course it was quite common under the old equity practice to require the pleaders to go before a master, make discovery, and generally boil their pleadings down to a size and shape to fit them within or to exclude them from the established molds of equitable principle.

"Widow plus coercion equals equity.

"Here however we have widow but no coercion; simply a woman who has consulted one lawyer and has made a decision. Now, under the advice of a second lawyer, this same woman has come to a contrary conclusion. In short we have a woman who has changed her mind and asks equity to implement that change.

"I know the old adage: 'Every woman has a right to change her mind.' I know however of no equity principle by which the chancellor can, on the invocation of such right alone, set aside solemn deliberate acts advisedly done, or divest rights which by such acts have become vested."

After the second amended petition was filed a special chancellor sustained a demurrer to the petition as amended, and upon the appellant's refusal to plead further her petition was dismissed; hence this appeal.

It is insisted that the conduct of the chancellor who heard the cause was highly improper, because he had no right to order testimony to be heard on the demurrer. Assuming this position to be sound, it would not alter the case if the petition as amended failed to state a cause of action. As said in Stockton v. Hall, (Hardin) 3 Ky. 160, "It is better to do right from wrong inducements, than to reverse that which is right because it was wrongfully engendered."

It may be well to say at the outset that it has been held in this jurisdiction that a widow may withdraw her revocation of a will, if her application is timely made and she can show that the renunciation was against her interest, or was induced by fraud, misrepresentation or

any untoward intervening cause, provided the rights of innocent parties have not intervened. This is an exception to the general rule, however, which is to the effect that a widow having deliberately elected to renounce a will can not thereafter recall it, because she is given one year in which she may investigate fully her rights under the will. Craven v. Craven, 181 Ky. 428, 205 S. W. 406, and cases cited therein.

Thus we are faced with the question as to whether Mrs. McGinnis stated facts in her petition as amended sufficient to meet the test just mentioned. In substance the petition charges "the renunciation was made through mistake of law and fact;" shortly after the death of Mr. McGinnis the plaintiff consulted an attorney who had transacted some business for Mr. McGinnis and he advised her it was to her best interest to renounce the will and "advised her strongly to do so, and told her she had only a short time in which to so act;" relying upon the advice of counsel the revocation which was very detrimental to her interest was made; at the time of the renunciation she did not understand fully the nature and character of the estate left by her husband; shortly before the present action was filed she consulted her present attorney and he made an examination of the will and had an audit made of the trust estate; present counsel advised that the renunciation was a very unwise step and that she should obtain permission from a court of equity if possible to withdraw the renunciation; this was the first time she knew she had acted unwisely, or that she could apply to a court of equity for permission to withdraw the renunciation; she had practically no business experience or knowledge of law and had no accurate or complete knowledge of her husband's estate or the conditions thereof, or what she would receive under the will, or under her dower interest, and that her first counsel did not have much information although she believed he had and relied and acted upon his wrong advice; and if she be permitted to withdraw her renunciation and take under the will she will be able to live in a modest but comfortable fashion.

The first amended petition merely set forth that no dower had been allotted to Mrs. McGinnis. A second amendment set forth that Mrs. McGinnis was "deceived and misled" by the advice of her Taylorsville attorney,

although without any wrongful intent on his part, into renouncing the will, and that at the time of the renunciation neither she nor her then attorney knew the value of her deceased husband's estate, net or gross; and that she did not act deliberately in making such renunciation, but hastily and without fault on her part, and at a time when she was ignorant of her rights under her husband's will and ignorant of her right of dower when she renounced the will.

We can not agree with the contention of Mrs. McGinnis' counsel to the effect that the petition as amended stated a good cause of action. The provisions of Mr. McGinnis' will were clear and unambiguous. A trustee was named and qualified upon the probation of the will in April, 1942. It was not until two months thereafter, upon advice of reputable counsel, that Mrs. McGinnis decided to renounce the will. She had ample opportunity to consult the trustee as to the nature and extent of her husband's estate and to ascertain her rights under the will. There is no charge in the petition that the action of renunciation was based upon advice calculated to defraud or mislead Mrs. McGinnis; nor is there any allegation showing undue influence. There is no indication that she talked with anyone having an interest in the estate, but of her own volition chose a course of action, namely, the consulting of an attorney as to her rights and interest in her husband's estate.

Under the circumstances, we think the petition as amended was demurrable.

Judgment affirmed.